J. W. CONNOR, *as Sheriff of Cowley County*, v. NEIL WILKIE.

1. PETITION, *Held Sufficient.* The petition in this case examined, and *held* to state sufficiently a cause of action.

2. DEMURRER, *Overruled — Ruling Reviewed.* Where a demurrer to a petition is overruled, and the defendant elects to answer and proceeds to trial, and said cause is tried upon the petition so demurred to and then brought here by the party demurring, the ruling of the trial court will be passed on here, even though more than one year has elapsed since the making of such ruling.

3. INSTRUCTIONS — *Objections — Waiver.* Objections to the instructions of the trial court, to be available in this court, should be made and the rulings excepted to on the trial, otherwise they are waived.

4. RULE *as to Instructions — Untimely Request.* A rule requiring a request for written instructions to be made at the commencement of a trial is unreasonable, but where a request for written instructions is delayed until within a few minutes of the close of the evidence, and at a time when the granting of such request would necessarily detain the business of the court while the instructions were being prepared and reduced to writing, such request is not made in time, and the refusal thereof is not error.

5. REMARK BY COURT — *Judgment, not Reversed.* A remark made by the court concerning the testimony of a witness, which, though open to criticism, is not deemed to have affected the result, will not require a reversal of the judgment.

6. TESTIMONY *Sustains Judgment.* The testimony examined, and *held* sufficient to sustain the judgment.

MEMORANDUM.—Error from Cowley district court; M. G. TROUP, judge. Replevin by Neil Wilkie against J. W. Connor, as sheriff. Judgment for plaintiff, and defendant brings error. Affirmed. The opinion herein, filed August 8, 1895, contains a sufficient statement of the facts.

*Dalton & Dalton*, and *Beach & Torrance*, for plaintiff in error.

*Redden & Schumacher*, for defendant in error.

The opinion of the court was delivered by

COLE, J. : This is an action in replevin brought by Neil Wilkie against J. W. Connor, sheriff of Cowley county, Kansas, in the district court of Cowley county, to recover possession of 93 head of hogs which had been levied upon by said sheriff under an execution against one D. M. Carlton. Before trial of the cause plaintiff became insolvent, and the action proceeded in the name of one G. W. Ogg, as assignee of said insolvent debtor. There was a verdict and judgment for plaintiff below, and Connor brings the case here for review.

The first error complained of is the overruling of the demurrer of plaintiff in error to the amended petition of the defendant in error. The defendant in error claims that this ruling of the district court cannot now be reviewed here, for the reason that more than one year has elapsed between the overruling of the demurrer and the filing of the petition in error in the supreme court. This position is not well taken. Where a demurrer is overruled, and the party filing same elects to plead in the action, he must await the result of the final trial, and cannot be permitted to file a petition in error in the supreme court until such final trial is had. (*U. P. Rly. Co. v. Estes*, 37 Kas. 229; *Hulme v. Diffenbacher*, 53 id. 181.) However, we consider that the demurrer to the petition was properly overruled. The amended petition alleged, in substance, that on or about May 10, 1888, Neil Wilkie and D. M. Carlton entered into an agreement, the terms of which were that Wilkie should furnish to Carlton certain moneys to be used in the purchase of hogs, which were to be shipped to market and sold and the proceeds to be applied, first, to the expenses

of shipment and selling, and second, to the payment to Wilkie of all moneys so advanced with interest at 12 per cent., and if the amount realized by the sale of the hogs was insufficient to pay the expenses and the money so advanced, with interest, then Carlton was to pay Wilkie the deficiency. And it was further agreed that all the hogs so purchased should remain the property of Wilkie, and that the proceeds of the sales should be applied as agreed. If there was any remainder after the payments above specified were made, such remainder was to be paid to Carlton. The petition further alleged, in substance, the purchase of the hogs levied upon under the terms of the said agreement; that they were purchased by moneys furnished by Wilkie; that they were the property of Wilkie, and that he was entitled to possession of them; that the defendant, Connor, wrongfully and unlawfully withheld the property from Wilkie, and further stated the value of said property, and alleged a demand prior to the commencement of the action. Certainly these allegations are sufficient to support a claim of ownership on the part of said Wilkie as against a demurrer. It was immaterial who was to have the actual possession of the property from the time they were purchased until they were sold; for, if Wilkie furnished money under a contract like the one alleged in said petition, Carlton merely acted as an agent in the transaction, and never had any ownership of any of the property so purchased, and no interest in the proceeds from the sale of such property unless there should be a surplus after repaying the money expended with interest and expenses. We see nothing inconsistent in such agreement.

The second assignment of error is the overruling of the motion of the plaintiff in error for a new trial,

and under this head the plaintiff in error urges seven reasons why said motion for a new trial should have been sustained; the first of which reasons is practically answered by the views above expressed. There was an abundance of evidence to sustain the position of the defendant in error that he was the absolute owner of the property levied upon, and a demurrer to the evidence was therefore properly overruled. The second reason urged by the plaintiff in error why the motion for a new trial should have been sustained, is the giving of certain instructions by the trial court to the jury; and under this head plaintiff in error again argues with considerable force that there was nothing in the petition or the issues framed in the case that would require the court to submit to the jury the claim of actual and absolute ownership of the property in question. As we have before said, the petition under which the cause was tried alleges absolute ownership. The answer of the sheriff was, first, a general denial, and, second, that the property which was levied upon belonged to D. M. Carlton, and was so levied upon under an order of attachment issued against the property of the said Carlton. The answer further attempted to set up that in the action where said order was issued the title of said property had been fully litigated. The evidence in the case, both for plaintiff and defendant, was directed toward the question whether Wilkie or Carlton was owner of the property; and all the circumstances surrounding the transactions, including the terms of the contract alleged to have been made between Wilkie and Carlton, the manner of the purchase and shipment of the hogs, were inquired into, and this with the evident purpose of showing upon the one hand that Wilkie was owner of the property, and, upon the other hand,

that he had simply loaned Carlton the money, and that the hogs were the property of Carlton. Under these issues and this testimony the instructions of the court with regard to the ownership of the property were proper; but if the instructions had been erroneous, the plaintiff in error could not now be heard to complain, for the record nowhere discloses any exception to these or any part of the instructions given by the court.

Objections to the instructions of the trial court, to be available in this court, should be made and the ruling excepted to on the trial, otherwise they are waived. (*Gafford v. Hall*, 39 Kas. 166 ; *Mercantile Co. v. Fullam*, 43 id. 181 ; *Mo. Pac. Rly. Co. v. Johnson*, 44 id. 660.) For the same reason, the further objection raised in this court by the counsel for the plaintiff in error to other portions of the instructions given by the court, as well as the remark of the counsel in his argument to the jury, which is now complained of, cannot be considered.

This brings us to the fourth reason given why a motion for a new trial should have been sustained, viz., the refusal of the court to instruct the jury in writing. And this we consider the most serious question urged by counsel for the plaintiff in error. It appears from the record that a short time before the close of the evidence, the attorney for the plaintiff in error, defendant below, requested the court to instruct the jury in writing, and thereupon the court refused so to instruct the jury in writing, using the following language :

"The court refuses to instruct the jury in writing upon request of the defendant : First, because under our rule this request is to be made at the commencement of the trial ; and we also overrule it because the request is made only a few minutes before the conclu-

sion of all the evidence in the case, and because the request might just as well have been made on yesterday, at the conclusion of the day's business, and the court could then have had opportunity to prepare the instructions during the adjournment, and not have delayed and detained the business of the court; and the court refuses, lastly and finally, because the request coming at this time would necessarily detain the business of the court while the instructions were being prepared and reduced to writing.''

Counsel for the plaintiff in error urges that the statute makes it mandatory upon the trial court to instruct the jury in writing whenever requested so to do by either party, and cites the case of *Rich v. Lappin*, 43 Kas. 666, in support of his position; but in that case it does not appear that the question of the time when such request was made became a material factor either in the refusal of the trial court to give written instructions or the decision of the supreme court reversing the judgment for the failure of the trial court so to do. The record in that case disclosed that the court delivered his instructions orally to the stenographer, who wrote them out after the jury had retired, and the supreme court held that this did not comply with the statute requiring *written* instructions to be given upon request of either party. After careful investigation we have failed to find any case upon the point raised decided by our supreme court since the adoption of our present statute in regard to the order of procedure of trials in civil cases; but in the case of the *A. T. & S. F. Rld. Co. v. Franklin*, 23 Kas. 75, the question as to whether a request for written instructions was submitted in time was passed upon in an opinion written by VALENTINE, J. After citing a number of cases decided by the supreme court of Indiana, from which state the statute of Kansas of 1868 with

32—APP.

reference to giving and refusing instructions in civil cases and reducing the same to writing was copied, and, announcing the rule laid down by such decisions, the court says:

"The rule also seems reasonable to us; for, while it imposes no hardship upon either of the parties or the counsel, a different rule might impose great hardship or great inconvenience upon both the court and parties in other cases waiting for their cases to be heard. If counsel may wait until the close of the argument before making the request, it would necessarily cause great delay in the proceedings of the court and materially increase costs and expenses. Generally, it would require an adjournment of the court to enable the judge to prepare his written instructions."

Under our statute as it then existed, the argument of the counsel preceded the giving of the instructions by the court, while now the instructions are given at the close of the evidence and before the argument of the counsel, and it would seem that the rule, as laid down in the case last cited, ought to apply with the same force now to a request made just at the close of the evidence as it did under the former statute in the case of a request that was made just at the close of the argument. The business of the court under the order of procedure laid down by the present statute would be delayed to the same extent, and an adjournment would be necessary in nearly every case, unless the request for written instructions be made at a reasonable period of time before the close of the evidence. In the case at bar we cannot hold that a rule requiring this request to be made at the commencement of the trial is a reasonable one, for in many cases it is impossible for counsel to determine at the commencement of the trial whether written instruc-

tions will be desired or not; and while it would im-
pose no hardship upon the counsel to make a request
for written instructions at the commencement of the
trial, yet we could not hold that if not then made,
the request would be too late.    But it further appears
from the record that the request in this case was
made only a few minutes before the conclusion of all
the evidence in the case, and at a time when a com-
pliance therewith would necessarily delay the business
of the court while the instructions were being pre-
pared and reduced to writing.    Impressed as we are
with the soundness of the reasoning in the case above
quoted, we are forced to the conclusion that the re-
quest for written instructions was made too late, and
was therefore properly refused.

Plaintiff in error further complains of a remark
made by the court in the presence of the jury during
the trial of the cause, and alleges that said remark
was prejudicial to the rights of the plaintiff in error,
and should cause a reversal of the judgment.    The
record shows that D. M. Carlton was examined by
both plaintiff and defendant at different times, and
his testimony introduced in the form of depositions
at the trial.    The statements of the witness in the
two depositions were very conflicting, and would im-
press even a casual observer with the idea that the
witness was far from reliable.    When the second
deposition given by Carlton was offered at the trial,
the court asked the question, "Whose deposition is
that?" and, upon being informed that it was the
deposition of the witness Carlton, made use of the
following expression: "He must be an awful liar."
There can be no doubt that a remark of this character
was extremely reprehensible, and tended to detract
from the dignity of the court and the entire proceed-

ing. No court can expect the litigants, the bar or the public to retain respect for its proceedings when the court itself is lacking in the dignity which should attend the trial of causes; but it is not every expression of the court, however reprehensible it may be, that will work the reversal of a judgment. The remark made by the court in this case applies as fully to the testimony of the witness offered by the plaintiff below as it did to the testimony of the same witness when offered by the defendant below. In the case of *The State v. Burwell*, 52 Kas. 686, a witness was personally giving testimony before the jury, and, in response to an objection made to an inquiry, the trial court remarked, "It seems to me that the state could just let this witness go right on with his romance." This was a remark touching the testimony of a witness introduced by the defendant alone, and upon trial of a felony case; and while the supreme court, in passing upon the remark of the trial court, criticised its action quite severely, yet it declined to reverse the judgment on account of such a remark. In this case, then, had the remark not been made which was made by the trial court, the jury must have been impressed with the fact that the witness, Carlton, did, either in the one deposition or the other, testify falsely upon the material facts at issue, and we apprehend it could have given neither deposition much weight in the determination of the case. We cannot see that the plaintiff in error was prejudiced by the remark of the court, and therefore the judgment will not be reversed on account of such remark.

The seventh and last reason urged for a reversal of the judgment is, that the verdict is not sustained by sufficient evidence, and the counsel for the plaintiff in error reiterate their argument in regard to the ques-

tion of special or general ownership claimed by the plaintiff below, and refer particularly in their brief to the affidavit in replevin made by the plaintiff below. A careful examination of this affidavit shows to us that practically the same claim was made therein as was made in the amended petition upon which this case was tried, and while the affidavit makes use of the expression, "special ownership," yet it also alleges that the hogs were bought with the money of plaintiff under a contract with Carlton by which plaintiff was to furnish the money, and the hogs purchased with such money were to be shipped and sold in plaintiff's name, and that of the proceeds of the sales Carlton was to have no part, excepting what arose from the profits. These specific statements are consistent with general ownership and with the whole theory upon which the case was tried by both parties.

There being no material error, the judgment of the district court is affirmed.

All the Judges concurring.